UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FILEMON HERNANDEZ, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>SONOMA-MARIN AREA RAIL TRANSIT DISTRICT (SMART),<br><br>    Defendant. | Case No. 21-cv-01782-DMR<br><br>**ORDER ON MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 44 |

Defendant Sonoma-Marin Area Rail Transit District ("SMART") moves pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss Plaintiffs' second amended complaint ("SAC"). [Docket No. 44.] The court ordered supplemental briefing on the issue of subject matter jurisdiction, which the parties timely filed. [Docket Nos. 53-55.] This matter is suitable for resolution without a hearing. Civ. L.R. 7-1(b). For the following reasons, the motion is granted.

**I.    BACKGROUND**

    **A.    Factual Allegations**

This case is about SMART's construction and operation of a bike and pedestrian pathway on land adjacent to the railway it operates on an existing railroad. [Docket No. 41 (SAC) ¶ 4.] The State of California formed SMART as a "special purpose district" in 2002 to oversee the development and operation of passenger and rail service and "limited freight operations" in Sonoma and Marin Counties. *Id*. at ¶¶ 146, 152, 154. SMART began operating 43 miles of passenger rail service in 2017 and "planning and constructing multiple miles of adjacent bike and pedestrian pathways along the rails and ties and on top of the right-of-way" adjacent to the railroad. *Id*. at ¶ 154.

Plaintiffs are a group of 138 individuals and entities located in Sonoma and Marin Counties that collectively own fee title in 167 parcels of land adjacent to and underlying the railroad's right-of-way. SAC ¶¶ 8-145, 161. Plaintiffs allege that SMART possesses only "an easement over and through the Plaintiffs' land" and that it "has improperly and illegally invaded, taken, and burdened Plaintiffs' fee ownership in their land associated with the right-of-way" by constructing and operating the "hiking and biking trail" on Plaintiffs' land within the right-of-way. *Id*. at ¶¶ 4, 157. Plaintiffs allege that SMART "had no legal rights whatsoever to occupy the right-of-way" to construct the trail and that "an easement for a hiking and biking trail is beyond the scope of an easement for railroad purposes." *Id*. at ¶¶ 155, 158. SMART has already constructed the trail in portions of the right-of-way and has begun planning construction of other portions. *Id*. at ¶ 153. Plaintiffs further allege that SMART has constructed the trail "without notice or compensation to Plaintiffs." *Id*. at ¶ 159.

Although the FAC does not clearly categorize the 138 Plaintiffs, it pleads identical sets of allegations for three distinct groups. Group A consists of 30 individuals and/or entities that allege that they own land in Sonoma County or Marin County "which is adjoining and underlying . . . SMART's hiking and biking pathway which *has been constructed* on the railroad's easement and the Plaintiffs' fee ownership of the right-of-way." SAC ¶¶ 8-15, 35-37, 44, 46, 56-58, 64-66, 68, 75, 86, 87, 95, 97, 107, 108, 131, 132, 136, 145 (emphasis added); Ex. A. Group B consists of 51 individuals and/or entities that allege that they own land "adjoining and underlying the right-of-way operated by SMART at a location where SMART has indicated that a hiking and biking path *will be constructed in the future* on the railroad's easement and Plaintiffs' fee ownership of the right-of-way." SAC ¶¶ 16-23, 40, 41, 43, 45, 48, 51-53, 55, 67, 72, 74, 78, 83, 85, 88, 93, 94, 98, 103, 105, 109, 110, 112, 113, 114, 116-120, 122-125, 127, 133, 137, 138, 140, 143, 144 (emphasis added); Ex. B. Group C, made up of the remaining 57 individuals and/or entities, allege that they own land "which is adjoining and underlying the right-of-way." They further allege that "[s]ince the railroad, and ultimately SMART, only acquired an easement limited to railroad purposes, [they are] entitled to a determination that [they] hold fee simple title within the right-of-way." SAC ¶¶ 24-34, 38, 39, 42, 47, 49, 50, 54, 59-63, 69-71, 73, 76, 77, 79-82, 84, 89-92, 96, 99-102, 104, 111,

2

115, 121, 126, 128-130, 134, 135, 139, 141, 142.

The SAC alleges the following claims: 1) quiet title pursuant to California Code of Civil Procedure section 760.010 et seq. on behalf of all three Plaintiff groups; 2) violation of 42 U.S.C. § 1983 and the Fifth Amendment's Takings Clause on behalf of the Group A Plaintiffs; 3) inverse condemnation on behalf of the Group A Plaintiffs; 4) inverse condemnation (de facto taking) on behalf of the Group B Plaintiffs; and 5) declaratory judgment pursuant to California Code of Civil Procedure section 1060 on behalf of the Group B Plaintiffs.

### B.     Procedural History

Plaintiffs filed their complaint on March 15, 2021. The parties stipulated to stay the litigation until June 30, 2021 and to extend SMART's deadline to file a responsive pleading until July 30, 2021. [Docket No. 21.] Plaintiffs filed a first amended complaint ("FAC") on July 12, 2021. [Docket No. 24.] After SMART moved to dismiss the FAC, the parties filed a stipulation to dismiss certain portions of the FAC and agreed to a schedule for any second amended complaint and corresponding motion to dismiss. [Docket Nos. 32, 37.] The court granted the parties' stipulation and denied the motion to dismiss the FAC as moot. [Docket No. 38.] Plaintiffs filed the SAC on October 25, 2021

SMART now moves pursuant to Rule 12(b)(1) to dismiss certain claims for lack of subject matter jurisdiction based on ripeness, namely, Groups B and C's quiet title claim and Group B's claims for inverse condemnation and declaratory judgment. It also moves pursuant to Rule 12(b)(6) to dismiss the quiet title claim brought by all Plaintiffs and Group B's claim for inverse condemnation.[1]  SMART does not challenge Group A's Fifth Amendment and inverse condemnation claims. *See* Reply 7 n.1.

Following the completion of the briefing on the motion to dismiss, the court ordered the parties to submit supplemental briefing on the issue of ripeness as to the quiet title, inverse condemnation and declaratory judgment claims, as ripeness pertains to a federal court's subject

---

[1] It is not clear whether SMART moves under 12(b)(6) to challenge Group B's fifth claim for declaratory relief as insufficiently pleaded. The court construes SMART's arguments on the fifth claim as a 12(b)(1) ripeness challenge.

3

1 matter jurisdiction, *Chandler v. State Farm Mut. Auto. Ins. Co*., 598 F.3d 1115, 1122 (9th Cir. 2010), and the parties did not brief the issue with respect to federal law. [Docket No. 53.] The parties timely filed the requested briefing. [Docket No. 54 (Def.'s Supp. Br.), 55 (Pls.' Supp. Br.).]

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

A motion to dismiss filed pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A court will dismiss a party's claim for lack of subject matter jurisdiction "only when the claim is so insubstantial, implausible, foreclosed by prior decisions of th[e Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation and quotation marks omitted); *see* Fed. R. Civ. P. 12(b)(1). The challenging party may make a facial or factual attack challenging subject matter jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). A facial challenge asserts that "the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In contrast, a factual attack disputes "the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id*. at 1039. A factual challenge permits the court to look beyond the complaint, without "presum[ing] the truthfulness of the plaintiff's allegations." *White*, 227 F.3d at 1242 (citation omitted). Even the presence of disputed material facts "will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987) (citations omitted).

### B. Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). When reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson*, 551 U.S. at 94 (citation omitted), and may dismiss a claim "only where there is no cognizable legal theory" or there is an absence of

4

"sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

As a general rule, a court may not consider "any material beyond the pleadings" when ruling on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 688 (citation and quotation marks omitted). However, "a court may take judicial notice of 'matters of public record,'" *id*. at 689 (citing *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986)), and may also consider "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading," without converting a motion to dismiss under Rule 12(b)(6) into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith*, 307 F.3d at 1125-26. The court need not accept as true allegations that contradict facts which may be judicially noticed. *See Mullis v. U.S. Bankr. Court*, 828 F.2d 1385, 1388 (9th Cir. 1987).

### III. DISCUSSION

#### A. Subject Matter Jurisdiction

SMART moves to dismiss the claims brought by Groups B and C for quiet title, inverse condemnation, and declaratory judgment for lack of subject matter jurisdiction on the ground that they are not ripe. *See* Mot. 6, 14; Def.'s Supp. Br. 5.

##### 1. Article III Standing and Ripeness

Federal courts are courts of limited jurisdiction. Under Article III of the United States Constitution, federal courts are limited to deciding "cases" and "controversies." *See Bova v. City*

*of Medford*, 564 F.3d 1093, 1095 (9th Cir. 2009).  Article III standing "is a necessary component of subject matter jurisdiction." *In re Palmdale Hills Prop., LLC*, 654 F.3d 868, 873 (9th Cir. 2011).  Article III standing requires three elements: "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).  "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (citing *Lujan*, 504 U.S. at 560).  While a concrete injury need not be tangible, "it must actually exist"; that is, it must be "real, and not abstract."  *Id*. at 340 (quotation marks and citation omitted).  "No concrete harm, no standing." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2200 (2021).

"While standing is primarily concerned with *who* is a proper party to litigate a particular matter, ripeness addresses *when* litigation may occur." *Bova*, 564 F.3d at 1096 (citation omitted; emphasis in original).  "The 'central concern [of the ripeness inquiry] is whether the case involves uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Chandler*, 598 F.3d at 1122-23 (quoting *Richardson v. City and County of Honolulu,* 124 F.3d 1150, 1160 (9th Cir. 1997)).  "[R]ipeness is a means by which federal courts may dispose of matters that are premature for review because the plaintiff's purported injury is too speculative and may never occur." *Chandler*, 598 F.3d at 1122.  "The basic rationale of the ripeness doctrine is to prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 662 (9th Cir. 2002) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967) (internal quotation marks omitted)).

The Ninth Circuit has explained that "[a] proper ripeness inquiry contains a constitutional and a prudential component." *Bishop Paiute Tribe v. Inyo Cty*., 863 F.3d 1144, 1153 (9th Cir. 2017). "[T]he constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing inquiry." *Twitter, Inc. v. Paxton*, 26 F.4th 1119, 1123 (9th Cir. 2022) (quoting *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 n.2 (9th Cir. 2003) (citation omitted)).

"The question is thus whether the issues presented are definite and concrete, not hypothetical or abstract." *Twitter*, 26 F.4th at 1123 (quotation marks and citation omitted). A court's evaluation of the prudential aspect of ripeness is guided by "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id*. at 1154 (quotation marks and citation omitted).

As standing and ripeness pertain to a federal court's subject matter jurisdiction, they are properly raised in a Rule 12(b)(1) motion to dismiss. *Chandler*, 598 F.3d at 1122. Plaintiffs bear the burden of establishing standing and ripeness with respect to each of their claims. *Lujan*, 504 U.S. at 561; *Safer Chemicals, Healthy Fams. v. U.S. Env't Prot. Agency*, 943 F.3d 397, 412 (9th Cir. 2019).

### 2. Group C's Quiet Title Claim

The Group C Plaintiffs allege that they own land "which is adjoining and underlying the right-of-way," and that "[s]ince the railroad, and ultimately SMART, only acquired an easement limited to railroad purposes, [they are] entitled to a determination that [they] hold fee simple title within the right-of-way." *See, e.g.*, SAC ¶ 24. Their sole claim for relief is for quiet title under state law.

SMART argues that Group C's quiet title claim is not ripe because the SAC does not allege that its activities have encroached on their rights at all, and there is no "present and concrete injury" sufficient to satisfy the injury in fact requirement of Article III. Def.'s Supp. Br. 6; *see Twitter*, 26 F.4th at 1123 ("noting that "the constitutional component of ripeness is synonymous with the injury-in-fact prong of the standing inquiry" (quotation marks and citation omitted). SMART also argues that the prudential component of the ripeness inquiry favors dismissal because the Group C Plaintiffs' "alleged title in the properties will not be harmed or derogated by a lack of judicial intervention at this time." Def.'s Supp. Br. 6.

In *TransUnion*, the Supreme Court examined "[w]hat makes a harm concrete for purposes of Article III." 141 S. Ct. at 2204. In order to determine whether a harm is sufficiently concrete to confer Article III standing, the Court instructed trial courts to "assess whether the alleged injury to the plaintiff has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for

7

a lawsuit in American courts," and "ask[ ] whether plaintiffs have identified a close historical or common-law analogue for their asserted injury." *Id*. Noting that "traditional tangible harms, such as physical harms and monetary harms" "readily qualify as concrete injuries under Article III," the Court observed that "intangible harms can also be concrete," including "reputational harms, disclosure of private information, and intrusion upon seclusion." *Id*. (citations omitted). Further, while holding that "Congress's views may be 'instructive'" in determining whether a harm is sufficiently concrete, the Court explained that "Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III . . ." *Id*. at 2204-05.

*TransUnion* also noted that "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring," *Id*. at 2210 (citing *Clapper v. Amnesty Int'l*, 568 U.S. 398, 414 n.5 (2013), but "allegations of *possible* future injury" or an "objectively reasonable likelihood" of future injury are insufficient to confer standing for injunctive relief. *Clapper*, 568 U.S. at 409-10 (emphasis in original). Instead, a "threatened injury must be *certainly impending* to constitute injury in fact." *Id*. at 409, 414 n.5 (emphasis in original) (cleaned up).

Here, the Group C Plaintiffs bring a quiet title claim under California's Quiet Title Act, California Code of Civil Procedure section 760.010 *et seq*., which permits an action "to establish title against adverse claims to real or personal property or any interest therein." Cal. Civ. Proc. Code § 760.020(a). The Quiet Title Act "creates a special procedural mechanism for seeking and obtaining in rem judgments resolving adverse claims to property that would be binding even to nonparties and hence be 'good against all the world.'" *Tsasu LLC v. U.S. Bank Tr., N.A.*, 62 Cal. App. 5th 704, 715 (2021) (citations omitted). As stated in *TransUnion*, the fact that the California Legislature created a statutory right to sue for quiet title relief is insufficient to establish an injury in fact. 141 S. Ct. at 2204-05. The determinative question is whether the Group C Plaintiffs have suffered a concrete harm due to SMART's construction and operation of the pathway or plans for the same. The SAC alleges no such harm. In contrast to the Group A and Group B Plaintiffs, the Group C Plaintiffs do not allege that SMART has constructed the pathway on their land or even

that it has plans to do so in the future. They allege simply that they "are entitled to a determination that [they] hold fee simple title within the right-of-way." *See, e.g.*, SAC ¶ 24.

In their supplemental brief, Plaintiffs contend that in actions for quiet title, "the title dispute is the central, and only, issue." They argue that "[t]he 'present conflict and concrete injury' *is* Plaintiffs' claim to fee title of the corridor as against SMART, plus SMART's cloud on Plaintiffs' title, and nothing more is needed to satisfy the constitutional aspect of ripeness." Pls.' Supp. Br. 2-3 (emphasis in original). Notably, the Group C Plaintiffs do not allege that SMART's actions have resulted in a cloud on title or that they are at risk of such harm, nor do they identify any actual injury that they have suffered as a result of SMART's actions. Instead, they contend that they need not allege anything more than an "adverse claim to title" to plead an injury in fact: "[i]n SMART's view, not only does a plaintiff need to assert an adverse claim to title, but also, they need to allege an accompanying injury. That is demonstrably false and cannot be the result." *Id*. at 3. This argument is entirely unsupported; the Group C Plaintiffs offer no authority to support the legal position that they need not allege an "injury" to establish Article III standing. Their argument is squarely foreclosed by the requirement that plaintiffs in federal court must "demonstrate a concrete and particularized injury caused by the defendant and redressable by the court . . ." *TransUnion*, 141 S. Ct. at 2203.[2]

As the Group C Plaintiffs "do[ ] not claim to have suffered an injury that [SMART] caused and the court can remedy, there is no case or controversy for the federal court to resolve." *See TransUnion*, 141 S. Ct. at 2203 (quoting *Casillas v. Madison Avenue Assocs., Inc*., 926 F.3d 329, 333 (7th Cir. 2019)).[3] Accordingly, the Group C Plaintiffs' quiet title claim is not ripe and must be dismissed for lack of subject matter jurisdiction.

---

[2] Plaintiffs also argue that "SMART's argument taken to its logical conclusion would essentially erase quiet title actions from California jurisprudence." Pls.' Supp. Br. 3. This argument ignores the axiom that "federal courts are courts of limited jurisdiction," while "[s]tate courts are not bound by the constraints of Article III." *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1195-96 (9th Cir. 2016) (citing *ASARCO Inc. v. Kadish*, 490 U.S. 605, 617 (1989)). The Group C Plaintiffs remain free to pursue their quiet title action in state court. *See* Cal. Civ. Proc. Code § 760.040(a) ("The superior court has jurisdiction of actions under this chapter.").

[3] In light of this ruling, the court need not reach the prudential component of the ripeness inquiry with respect to the Group C Plaintiff's quiet title claim.

9

### 3. Group B's Claims for Quiet Title, Inverse Condemnation and Declaratory Judgment

The Plaintiffs in Group B allege that they own land "adjoining and underlying the right-of-way operated by SMART at a location where SMART has indicated that a hiking and biking path *will be constructed in the future* on the railroad's easement and Plaintiffs' fee ownership of the right-of-way." *See, e.g.*, SAC ¶ 16 (emphasis added). They bring claims for quiet title, inverse condemnation (de facto taking), and declaratory judgment.

The Group B Plaintiffs bring their quiet title claim pursuant to California's Quiet Title Act; they seek a determination that they own fee simple title to the parcels at issue. SAC ¶ 169. They seek similar relief in their claim for declaratory judgment under California Code of Civil Procedure section 1060, which states in relevant part that "[a]ny person interested under a written instrument . . . who desires a declaration of his or her rights or duties with respect to another, or in respect to, in, over or upon property . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of his or her rights and duties in the premises . . . ." Under this claim, the Group B Plaintiffs "desire a declaration of rights with respect to their fee ownership of the Property and a declaration that SMART's construction of a hiking and biking trail on the Property without Plaintiffs' express authorization would amount to an unconstitutional taking of property . . ." SAC ¶ 210.

Their claim for inverse condemnation (de facto taking) is based on the allegations that "SMART has been authorized to and has implemented plans to construct future hiking and biking trails on certain Plaintiffs' Property," and that "SMART's conduct in designating [the Group B] Plaintiffs' property rights as reserved for SMART's own purposes for the future construction and operation of a hiking and biking trail amounts to physical invasion and direct legal restraint of [the Group B] Plaintiffs' property interest in their fee ownership" of the parcels. SAC ¶¶ 165, 199.

SMART argues that the Group B Plaintiffs cannot demonstrate the constitutional aspect of ripeness as to all three of their claims because they have not alleged a concrete injury with respect to any of them. According to SMART, "there is no present use by SMART" of the Group B Plaintiffs' parcels "that conflicts with the Group B Plaintiffs' rights." Def.'s Supp. Br. 7. It

contends that none of the Plaintiffs in this group allege that they have lost any property rights as a result of SMART's actions and that their claims are each "entirely reliant on what . . . SMART may do in the future, at some unknown time." *Id*. at 8.

In response, Plaintiffs argue that "SMART has **already taken Plaintiffs' property**" based on the fact that "SMART openly and consistently states it believes it holds fee simple title to the disputed property, along with all necessary rights to construct a public recreational hiking and biking trail." Pl.'s Supp. Br. 3-4 (emphasis in original). They argue that "SMART's designation of the corridor for trail use amounts to an unconstitutional taking," and that "the sum total of SMART's actions conclusively suggest SMART views Plaintiffs' property rights as already taken," which "is the injury-in-fact." *Id*. at 4. With respect to the claim for declaratory judgment, Plaintiffs argue that they "seek only a declaration of the parties' rights, which is clearly an injury-in-fact under California law." *Id*. (citing *Tashakori v. Lakis*, 196 Cal. App. 4th 1003 (2011)).

Plaintiffs offer no authority to support their argument that the Group B Plaintiffs have suffered an injury in fact sufficient to establish ripeness. Plaintiffs must "demonstrate a concrete and particularized injury caused by the defendant and redressable by the court," *TransUnion*, 141 S. Ct. at 2203, but they make no effort to explain how SMART's "indication that a hiking and biking path will be constructed in the future on the railroad's easement and [the Group B] Plaintiffs' fee ownership of the right-of-way" has harmed them. *See, e.g.*, SAC ¶ 16. To be sure, a threatened injury may constitute an injury in fact, but the Supreme Court has instructed that "allegations of *possible* future injury" or even an "objectively reasonable likelihood" of future injury are insufficient to confer standing. *See Clapper*, 568 U.S. at 409-10 (emphasis in original) (rejecting "the Second Circuit's 'objectively reasonable likelihood' standard" as inconsistent with Supreme Court precedent). Instead, "[a] plaintiff threatened with future injury has standing to sue 'if the threatened injury is certainly impending, or there is a substantial risk the harm will occur.'" *In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018) (quotation marks omitted) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper*, 568 U.S. at 409, 414 n.5)). SMART has not constructed any portion of the trail on property belonging to the Group B Plaintiffs, and the SAC alleges only that "SMART

has been authorized to and has implemented plans to construct future hiking and biking trails" on their property. *See* SAC ¶ 165. In other words, Plaintiffs allege that SMART has included Plaintiffs' property in its planned trail area. However, the SAC alleges no specific facts about SMART's alleged intention or the plans that have allegedly been "implemented," including when any future construction will take place. It also does not allege that SMART has taken any actions pursuant to its alleged plans. While the Supreme Court's standard for standing based on future injury does not require "literal certainty" that a harm will occur, *see Munns v. Kerry*, 782 F.3d 402, 409 (9th Cir. 2015), the SAC does not allege any facts suggesting that SMART's construction of the pathway on the Group B Plaintiffs' property is "certainly impending" or that there is a "substantial risk" that the harm will occur. *See TransUnion*, 141 S. Ct. at 2210 ("a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." (citing *Clapper*, 568 U.S. at 414 n.5).

In the absence of a concrete harm that the Group B Plaintiffs have suffered or a threatened harm that is certainly impending, the Group B Plaintiffs have not satisfied the requirements of Article III standing. Accordingly, the Group B Plaintiffs' claims are dismissed for lack of subject matter jurisdiction. Group B Plaintiffs' claims one, four, and five (quiet title, inverse condemnation (de facto taking), and declaratory judgment) are dismissed with leave to amend to allege facts supporting ripeness of the claims under federal law.[4]

### B. Sufficiency of Pleading of the Quiet Title Claim

SMART argues that Plaintiffs fail to state a claim for quiet title because when a landowner's property is subject to a public use, "the landowner is not entitled to quiet title or to injunctive relief; rather, his remedy is by way of damages in the nature of inverse condemnation." Mot. 15 (quoting *Kachadoorian v. Calwa Cty. Water Dist.*, 96 Cal. App. 3d 741, 747, 750 (1979) (holding that due to the "public use and necessity of maintaining [a] pipeline in its present

---

[4] In light of the court's conclusion that the Group B Plaintiffs' claims are not ripe as currently pleaded, it does not reach SMART's arguments that the SAC fails to state a claim for inverse condemnation under Rule 12(b)(6).

location" on plaintiff's property, plaintiff was "not entitled to quiet title or to injunctive relief but is relegated to an action for damages for the taking of his property"). Accordingly, it argues, Plaintiffs' only remedy for SMART's construction of the trail on their property is damages. *Id*. at 16.

Plaintiffs do not dispute that damages are the only remedy for the taking of property by a public entity for a public use. Instead they argue that SMART "inappropriately" assumes that the trail is for a "public purpose" and that the taking is "necessary" to achieve that purpose, and that these are factual disputes for the trier of fact. Opp'n 5; *see Slemons v. S. California Edison Co.*, 252 Cal. App. 2d 1022, 1027 (1967) ("[t]he exercise of the power of eminent domain for [a public purpose] is conditioned upon the necessity of the taking."). The problem with this argument is that the SAC expressly alleges that "[t]he taking of Plaintiffs' property rights *is for a public purpose as authorized by the California Legislature*, which is the necessary governmental act . . ." SAC ¶¶ 189, 200 (emphasis added). Plaintiffs do not address this allegation, which appears to be an admission that the "public use" requirement is satisfied. *See, e.g., Burgoon v. Narconon of N. California*, 125 F. Supp. 3d 974, 984 (N.D. Cal. 2015) (holding that opposing party could argue that allegations in prior pleading were "prior judicial admission[s]" with "evidentiary force"); *Jackson v. Loews Hotels, Inc.*, No. EDCV18827DMGJCX, 2019 WL 6721637, at *3 (C.D. Cal. July 24, 2019) (treating allegations in earlier pleading as "judicial admissions"). As to the necessity of the taking, the SAC contains no allegation that the alleged taking of Plaintiffs' property was not necessary to achieve the public purpose of providing bike and pedestrian pathways adjacent to the railroad. Accordingly, as the SAC fails to allege that SMART effected a taking of Plaintiffs' property that was not for a public purpose and was not necessary to achieve a public purpose, it fails to state a claim for quiet title.

The court does not understand Plaintiffs' argument that "questions of public use and necessity are factual issues" and thus "not issues ripe for determination on the pleadings," Opp'n 5, in light of the SAC's acknowledgement that the California Legislature "authorized" "[t]he taking of Plaintiffs' property rights . . . for a public purpose," e.g., to build the trail. However, to the extent that it is Plaintiffs' position that they may somehow challenge the Legislature's

13

"authorization" of the taking of private property for public use, the court dismisses the quiet title claim brought by the Group A and B Plaintiffs with leave to amend to allege facts supporting such a position and addressing the foregoing deficiencies.

## IV.   CONCLUSION

For the foregoing reasons, SMART's motion to dismiss the SAC is granted. Group C's quiet title claim is dismissed without prejudice to re-filing in state court. Group B's claims one, four, and five are dismissed for lack of subject matter jurisdiction with leave to amend. The quiet title claim is dismissed under Rule 12(b)(6) with respect to Groups A and B with leave to amend. Any third amended complaint must be filed within 14 days of the date of this order.

The court will hold an initial case management conference on November 2, 2022 at 1:30 p.m. by Zoom webinar. A joint case management statement is due by October 26, 2022.

**IT IS SO ORDERED.**

Dated: August 12, 2022



Donna M. Ryu
United States Magistrate Judge

14